UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

─────────────────────────────────────────────

TAURUS CLYDE HILL, II,

    Plaintiff,

    v.                                  Case No. 24-cv-848-bhl

TAMARA CROUTHER-TOLE,

    Defendant.

─────────────────────────────────────────────

## DISMISSAL ORDER
─────────────────────────────────────────────

On July 8, 2024, Plaintiff Taurus Clyde Hill, II, who is representing himself, filed a lawsuit alleging that Defendant Tamara Crouther-Tole used excessive force against him at the Milwaukee Secure Detention Facility in violation of the Eighth Amendment. Dkt. Nos. 1 & 11. On November 22, 2024, the Court entered a scheduling order with a discovery cutoff deadline of May 5, 2025 and a dispositive motions deadline of June 5, 2025. Dkt. No. 18. Since then, Defendant has made numerous attempts to secure authorization to retrieve Hill's medical records, all of which have been unsuccessful due to Hill's failure to cooperate in signing the authorization.

On March 20, 2025, Defendant filed a motion to compel and a motion to stay the discovery cutoff and the dispositive motions deadline. Dkt. No. 34. Defendant explained that Hill had been given three different opportunities (January 16, 2025, February 11, 2025, and March 14, 2025) to sign a medical authorization needed to review his medical records, but he continuously refused to sign the document. *Id*. at 2-3. During the March 14 attempt to secure Hill's signature, Defense counsel asked the institution's litigation coordinator to hand-deliver the medical authorization to Hill and personally explain to him why it was needed to litigate this case. *Id*. at 3. Hill still refused to sign, claiming he had "sent it already." *Id*. On March 31, 2025, the Court granted Defendant's

motion, stayed all deadlines, and directed Hill to sign the medical authorization for the release of his medical records, if he wanted to continue prosecuting this case. Dkt. No. 39. The Court explained that Hill sought monetary damages for physical injuries, and Defendant could not properly defend herself without looking at Hill's medical records. *Id*. at 3. The Court warned Hill that, if he did not sign the medical authorization by April 14, 2025, the Court would dismiss this case based on his failure to prosecute it. *Id*. Following the Court's order, Hill filed numerous letters and documents with the Court complaining about discovery issues and his legal mail, but none of those letters indicated that he had agreed to sign the medical authorization, as directed by the Court. Dkt. Nos. 40-42.

On April 21, 2025, Defendant filed a "motion to clarify Plaintiff's consent to medical authorization, motion to stay all scheduling deadlines and/or dismiss the case." Dkt. No. 43. Defendant explained that, on April 7, 2025, the litigation coordinator at Hill's institution made another attempt to hand-deliver a copy of the medical authorization form for Hill to sign. *Id*. Hill signed the form on the same day but wrote the wrong date (3/27/24) and included additional unnecessary (and incorrect) information on the document. *See* Dkt. No. 73-1 at 3. He wrote that "RN Rodrequez Amerfiy" was his Parent/Guardian/Authorized Person and that her Relationship to Patient was "Care Provider Done Assessment." *Id*. Later in the day, on April 7, 2025, the Wisconsin Department of Justice received a letter from Hill that appeared to revoke the authorization he signed earlier in the day. Dkt. No. 44-1 (noting "[a]nd my own PHI is my own privet protect health information and I have a rights to not provide you that's my life and right . . . so I'll would hope the courts doesn't take this personal…"). Defendant then sought clarification on whether she had consent to use the medical authorization signed April 7, 2025 to retrieve Hill's medical records. Dkt. No. 43. On April 23, 2025, the Court ordered Hill to file a one-page signed document with the Court, by May 7, 2025, clearly stating that he gives Defendant consent to use the medical authorization he signed on April 7, 2025 to retrieve his medical records. Dkt. No. 46.

2

The Court directed Hill to write no other information on that one-page signed document and warned him that writing additional grievances and unnecessary information on an authorization document could be construed as "non-consent." *Id*. at 2. On May 5, 2025, the Court received a document from Hill, but he did not comply with the Court's order; he signed but also included additional writing on the document. *See* Dkt. No. 48. Hill explicitly stated, however, that he was signing and giving "permission and consent to turn over medical record to Courts and Defendant CO Counselor." *Id*. Accordingly, to expedite resolution of the case, the Court lifted the stay, extended the discovery deadline to August 16, 2025, and the dispositive motions deadline to September 16, 2025. Dkt. No. 57.

On July 17, 2025, Defendant attempted to use Hill's signed medical authorization to obtain his medical records. Dkt. No. 61 at 3. However, the Wisconsin Department of Corrections Health Information Technician refused to turn over the medical records because the signed authorization included unnecessary words and incorrect information, which invalidated the document. *See id*. Specifically, the technician raised issue with: (1) Hill's words that "RN Rodrequez Amerfiy" was his parent, guardian, or authorized person; (2) the incorrect location of the signature date that Hill wrote in the signature block; and (3) the confusing relationship description. *Id*. The following day, on July 18, 2025, the institution's litigation coordinator again met with Hill in person to obtain a properly executed medical authorization that contained only his signature and date. *Id*. Hill again refused to sign the medical authorization.

On July 22, 2025, Defendant filed a second motion to compel Hill to provide a properly executed medical authorization, second motion to stay discovery and dispositive motion deadlines, or in the alternative, motion to dismiss the case. Dkt. No. 61. Hill did not respond to the motion. Instead, he filed two motions to "amend his consent authorization," claiming that he already provided adequate authorization and he did not believe he had to sign any additional documents. Dkt. Nos. 66 & 67. On August 8, 2025, Defendant again asked the litigation coordinator to talk to

3

Hill about signing the medical authorization because it was still invalid due to the unnecessary and incorrect information on it. Dkt. No. 69 at 8. Hill again refused to sign and again claimed that he would mail the document to Assistant Attorney General Brandon Flugaur at a later time. *Id*. Neither AAG Flugaur nor Defendant's legal team received a signed and valid medical authorization from Plaintiff. *Id*. On August 19, 2025, discovery closed and Defendant filed a second motion to dismiss the case based on Hill's failure to sign the medical authorization. Dkt. No. 69. Hill did not respond to that motion either. On September 2, 2025, Hill filed a motion to stay the case asserting that he will be released in the spring and can better litigate his case then. Dkt. Nos. 77 & 78. Hill then filed a "motion on default," claiming that Defendant has not given him the discovery he needs to litigate the case. Dkt. No. 79. On September 18, 2025, Defendant filed a motion to stay the summary judgment deadline. Dkt. No. 80. In the end, after nine months of good faith attempts to secure a medical authorization, Defendant still does not have a properly executed medical authorization to retrieve Hill's medical records.

As Hill has been warned in several prior orders, the Court has authority to dismiss a case when it appears that a plaintiff is not diligently prosecuting it. *See* Civ. L. R. 41(c)(E.D. Wis); *see* Dkt. Nos. 39 & 46. Based on the record above, the Court finds that Hill is not diligently prosecuting this case in good faith. All Hill had to do to properly execute a medical authorization was sign his name, provide the correct date, and write nothing else on the document. He was given at least six different opportunities to do so: January 16, 2025, February 11, 2025, March 14, 2025, April 7, 2025, July 18, 2025, and August 8, 2025. Each time, Hill either outright refused to sign the document, falsely claimed that he would send the signed document "later," or included unnecessary words and incorrect information, invalidating the document. The Court has warned Hill of the consequences of including unnecessary words and incorrect information on a medical authorization, yet he still refused to correct his medical authorization on both July 18, 2025 and August 8, 2025. Hill has inundated the docket with numerous letters, motions, and filings

4

throughout the case, but to date none of those documents—including his two motions claiming to "amend his consent authorization"—include the actual signed medical authorization. *See* Dkt. Nos. 66 & 67. He was warned several times that failure to sign the medical authorization would result in dismissal of his case based on failure to prosecute it. Dkt. Nos. 39 & 46. At this point, the Court will not provide Hill with any additional warnings or opportunities to properly sign his medical authorization. His latest refusal to sign, on August 8, 2025, is the end of his case. Accordingly, the Court will dismiss this case based on Hill's failure to diligently prosecute it. *See* Civ. L. R. 41(c). Hill is warned that he may be subject to sanctions in his other case, *see Hill v. Baham, et al.*, case no. 25-cv-1212-bhl, if he engages in similar dilatory and bad faith conduct.

**IT IS THEREFORE ORDERED** that this case is **DISMISSED** based on Hill's failure to prosecute it. The Clerk shall enter judgment accordingly,

**IT IS FURTHER ORDERED** that the remainder of the motions (Dkt. Nos. 61, 66, 67, 69, 77, 79, & 80) are **DENIED as moot.**

Dated at Milwaukee, Wisconsin on September 22, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge